IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADRIAN DIECKMAN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | C.A. No.  3:15-CV-484 |
| REGENCY ENERGY PARTNERS LP, | ) | |
| REGENCY GP LP,  REGENCY GP LLC, | ) CLASS ACTION | |
| ENERGY TRANSFER PARTNERS, L.P., | ) | |
| ENERGY TRANSFER PARTNERS GP, L.P., | ) | |
| ENERGY TRANSFER EQUITY, L.P., | ) | |
| MICHAEL J. BRADLEY, JAMES W. | ) | |
| BRYANT, RODNEY L. GRAY, JOHN W. | ) | |
| MCREYNOLDS, and MATTHEW S. RAMSEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Adrian Dieckman, by his attorney, for his complaint against defendants, allege upon personal knowledge as to himself, and upon information and belief as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action on behalf of himself and all other similarly situated public stockholders of Regency Energy Partners LP, ("Regency" or the "Company") challenging the entire fairness and seeking to enjoin the acquisition (the "Merger") of the publicly owned shares of Regency common stock by, Regency's controller, Energy Transfer Partners, L.P., and its affiliates Energy Transfer Partners GP, L.P., Energy Transfer Equity, L.P. (collectively referred to herein as "ETP").

2.     On January 26, 2015, ETP and Regency jointly announced that they had entered into the Agreement and Plan of Merger (the "Merger Agreement"), for the Merger, which was approved by Regency's Board of Directors (the "Individual Defendants" herein).   In the Merger, ETP will acquire Regency for stock in ETP equal to 0.4066 ETP common units and a cash payment of $0.32 for each common unit of Regency.  The exchange ratio equates to $26.89 per common share of Regency, based on ETP's closing price on December 16, 2013, the day the Merger was announced.

3.     While the Merger was approved by Regency's so-called independent directors, who comprise the Conflicts Committee, ETP controls Regency and its management and certain of its directors, who are either affiliated with, or beholden to ETP.  ETP is the 100% owner of Regency GP LP, Regency's general partner.  ETP employees operate some of Regency's business activities.  ETP knows Regency's business intimately, having run the Company's operations since 2010.  ETP's access to detailed financial information of Regency gave ETP unique information prior to and during the sales process that was not available to stockholders or potential buyers.

4.     Moreover, the Conflicts Committee was not independent.  Rather of the two members sitting on the Committee, one was a former president and co-founder of the Company. Therefore, the Merger was not approved by a fully independent Conflicts Committee as is represented to stockholders.

5.     In the Merger, Regency has agreed to sell the Company at a time when the Company is trading below its actual value, and Defendants have engaged in a process, and agreed to deal protection devices, that virtually eliminate other buyers or the prospect of a

superior offer for the Company.   While the Merger may benefit the Defendants, it harms the Company's public stockholders.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a citizen of Florida and no defendant is a resident of Florida.

7.      The Court has personal jurisdiction over each of the defendants because each either is organized under the laws of, conducts business in and maintains operations in this District, or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) the defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## THE PARTIES

9.      Plaintiff is, and at all times relevant hereto was, a stockholder of Regency and is a citizen of Florida.

10.     Regency is a Delaware limited liability company with principal executive offices located at 2001 Bryan Street Suite 3700, Dallas, Texas.  Regency specializes in the gathering and processing, contract compression, contract treating, transportation, fractionation and storage of natural gas and natural gas liquids.  Regency's assets are primarily located in Louisiana, Texas, Arkansas, Pennsylvania, Mississippi, Alabama and the mid-continent region of the United States,

which includes Kansas, Colorado and Oklahoma. Regency's common shares trade on the New York Stock Exchange under the ticker symbol "RGP." Regency is named herein as a necessary party in connection with equitable relief needed to prevent the consummation of the Merger agreed to by the Individual Defendants, in violation of their fiduciary duties to Plaintiff and the other stockholders of Regency.

11.     Defendant Regency GP LP ("Regency GP") is the general partner of Regency and is owned by Energy Transfer Equity LP ("ETE") and Regency GP LLC (which is 100% owned by ETE). ETE is the parent company of the acquiring entity.

12.     Defendant Michael J. Bradley ("Bradley") is and has been a director of Regency since January 2008 and in November 2010, he was also elected president and CEO of Regency. Bradley is a citizen of Texas.

13.     Defendant James W. Bryant ("Bryant") is and has been a director of Regency June, 2010. Bryant is the member of the so-called independent Conflicts Committee despite the fact that he co-founded Regency Gas Services, LLC, the predecessor to Regency, and served as president of Regency Gas Services, LLC, until December 2004, when it was sold to Hicks, Muse, Tate & Furst Inc. Bryant is a citizen of Texas.

14.     Defendant Rodney L. Gray ("Gray") is and has been a director of Regency since March 2008. Gray is also Chair of the Conflict's Committee. Gray is a citizen of Georgia.

15.     Defendant R. John W. McReynolds ("McReynolds") has been a director of Regency since May 2010. McReynolds is the President and Chief Financial Officer of Energy Transfer Equity, L.P. and has served as the President of ETE since March 2005 and as a Director and Chief Financial Officer of ETE since August 2005. In addition, from August 2004 to May 2010, he served as a Director of Energy Transfer Partners. McReynolds is a citizen of Texas.

16.     Defendant Matthew Ramsey ("Ramsey") is and has been a director of Regency since April 2014.   Ramsey is a citizen of Texas.

17.     Defendants Bradley, Bryant, Gray, McReynolds, and Ramsey are referred to collectively herein as the "Individual Defendants" or the "Board."

18.     Defendant Energy Transfer Partners, L.P. ("ETP") is a master limited partnership owning and operating one of the largest and most diversified portfolios of energy assets in the United States.   ETP's common shares trade on the New York Stock Exchange under the ticker symbol "ETP."

19.     Defendant Energy Transfer Partners GP, L.P. is the general partner of ETP.

20.     Defendant Energy Transfer Equity, L.P. ("Merger Sub") is a Delaware limited partnership formed for the purpose of effectuating the Merger.

21.     Collectively, the Individual Defendants, Regency, Regency GP, ETP, ETP GP and Merger Sub are referred to herein as "Defendants."

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

22.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other stockholders of the Company (except the Defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest), who are, or will be, threatened with injury arising from Defendants' actions, as more fully described herein.

23.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of October 31, 2014, there were over 340 million shares of Regency common stock outstanding not owned by Defendants.

(b)      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(c)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(d)      To the extent Defendants take further steps to effectuate the Merger, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

24.      There are questions of law and fact that are common to the Class including, *inter alia*, the following:

(a)      Whether the Individual Defendants breached their fiduciary duties of due care and loyalty with respect to Plaintiff and the other members of the Class as a result of the conduct alleged herein;

(b)      Whether the process implemented and set forth by the Defendants for the Merger is fair to the members of the Class; and

(c)      Whether ETP has aided and abetted the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the other members of the Class as a result of the conduct alleged herein; and

(d)      Whether Plaintiff and the other members of the Class would be irreparably harmed if Defendants are not enjoined from effectuating the conduct described herein.

## SUBSTANTIVE ALLEGATIONS

25.      In May 2010, ETP acquired Regency's general partner.  Since that time ETP has been intimately involved in the operations of Regency and providing employees that operate some of Regency's business activities.

26.      Regency participates in joint ventures and partnerships alongside ETP.  For example in 2011, Regency added a natural gas liquids platform to its service offerings through the Lone Star Joint Venture with ETP.  Regency owns a 30% interest in Lone Star with ETP owing the remainder and operating the assets on behalf of the joint venture.

27.      The following chart depicts the interrelationships between ETP and Regency:



28.     In fact, in its most recent 10-K Regency acknowledges that "ETE owns our General Partner and as a result controls us." The 10-K further acknowledges that this ownership interest gives rise to potential conflicts:

> The directors and officers of our General Partner and its affiliates have fiduciary duties to manage our General Partner in a manner that is beneficial to ETE, its sole owner. At the same time, our General Partner has fiduciary duties to manage us in a manner that is beneficial to our unit holders. Therefore, our General Partner's duties to us may conflict with the duties of its officers and directors to its sole owner. As a result of these conflicts of interest, our General Partner may favor its own interest or those of ETE, ETP, SXL, or their owners or affiliates over the interest of our unit holders.

29.     The relationship between ETP and Regency will undoubtedly affect the Regency stockholder vote concerning the Merger because the Board and Regency stockholders know that ETP (through its affiliates) controls Regency.

30.     ETP also had practical ability to thwart any non-ETP takeover proposal.  Also, there is no indication that Regency engaged in an auction process to maximize value to stockholders, and the terms of the Merger Agreement preclude an auction process.  Indeed, at no point prior to the announcement of the Merger did ETP divulge to the public that it was considering buying Regency, which may have instigated an auction.

31.     On January 26, 2014 the Company announced that it had entered into a Merger Agreement to be acquired by ETP in a cash and stock deal with a per share value of $26.89.

32.     The Company announced that the Merger had been approved both by the Board and the Company's Conflicts Committee.

33.     While the Company has a specific charter for the Audit and Risk Committee and the Compensation and Nominating Committee, it has no such guidelines for this essential

committee the presumably exists to monitor the conflicts between the Company and its general partner.

34.     The only mandate regarding the Conflicts Committee is found in the Company's Corporate Governance Guidelines.  These guidelines state that the members of the Conflicts Committee must be independent.

35.     Despite having only one requirement of the Conflicts Committee, the Company was unable or unwilling to follow this single mandate.

36.     Bryant, one of the two members of the Conflicts Committee, is not independent.

37.     Bryant co-founded Regency Gas Services, LLC, the predecessor to Regency, and served as president of Regency Gas Services, LLC, until December 2004, when it was sold to Hicks, Muse, Tate & Furst Inc.

38.     Bryant's history as a founder of the Company makes renders him not to be objective in assessing any potential transaction thereby resulting in a unfair process.

39.     Given the unfair process employed by the Company to favor a transaction for their general partner, it is unsurprising that the resulting price is equally unfair.

40.     Defendants' rationale for a premium price implying a fair price is unsound given the Company's strength and prospects.

41.     First, the premium, 13% over the share price the day before the Merger was announced, is hardly a premium and does not adequately compensate stockholders for their investment.

42.     Moreover, while the Company's stock price had been declining in the last six-months, it was poised for growth.

43.     The Street.com reported that Regency had very impressive revenue growth that "greatly exceeded the industry average of 6.7%. Since the same quarter one year prior, revenues leaped by 123.0%. Growth in the company's revenue appears to have helped boost the earnings per share."   Additionally, "[t]he net income growth from the same quarter one year ago has significantly exceeded that of the S&P 500 and the Oil, Gas & Consumable Fuels industry. The net income increased by 164.1% when compared to the same quarter one year prior, rising from $39.00 million to $103.00 million."

44.     As recent as October 22, 2013, Regency was trading at $10.97 and Regency's 52-week stock price prior to the announcement of the Merger reached $11.86.  Thus, ETP is taking advantage of a down market to purchase the Company at an undervalued price.

45.     The Merger does not reflect either the near-term or long-term prospects of Regency's business.  The financial unfairness of the Merger price demonstrates that the process used by the Individual Defendants in agreeing to the Merger was deficient and did not result in a value-maximizing price.

46.     In fact, of the nine analysts reporting to follow the stock, the mean estimate is $32 per share and the high is $34 per share.  Both well above the $26.89 implied per share value that stockholders are to receive as a result of the Merger.  Similarly, the price is well below the 52-week high of $33.57 per share.

47.     On January 26, 2015, the Company filed a Form 8-K with the United States Securities Exchange Commission wherein it disclosed the terms of the Merger Agreement.  As part of the Merger Agreement, the Individual Defendants agreed to the typical buyer-friendly deal terms, including a termination fee of $450 million, and a "no solicitation provision," that, together, decrease the chance that a competing bidder will emerge.  Therefore, the Merger

11

Agreement effectively precludes any other Company from making a bid, thereby denying stockholders the opportunity to have the benefit of a full auction process.   The Merger Agreement does not include a go-shop provision.

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Defendants

48.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

49.     The Defendants have violated their fiduciary duties owed to the public stockholders of Regency and have acted to put their personal interests ahead of the interests of Regency stockholders or acquiesced in those actions by fellow Defendants.   These Defendants have failed to take adequate measures to ensure that the interests of Regency stockholders are properly protected.

50.     By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Regency investment.   Plaintiff and other members of the Class will suffer irreparable harm unless the actions of these Defendants are enjoined and a fair process is undertaken.

51.     By reason of the foregoing acts, practices, and courses of conduct, Defendants have breached their fiduciary duties of loyalty, due care and diligence toward Plaintiff and the other members of the Class.

52.     As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the

value of Regency's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

53.    Unless enjoined by this Court, Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Merger to the disadvantage of the public stockholders.

54.    Plaintiff and members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that these actions threaten to inflict.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff demands judgment and relief in his favor and in favor of the Class, and against the Defendants as follows:

A.    Certifying this case as a class action, certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants and all those acting in concert with them from consummating the Merger;

C.    To the extent that the Merger is consummated before this Court's entry of final judgment, rescinding it and setting it aside or awarding rescissory damages;

D.    Enjoining Defendants from initiating any defensive measures that would inhibit their ability to maximize value for Regency stockholders;

E.    Directing Defendants to account to Plaintiff and the Class for all damages suffered by them as a result of Defendants' wrongful conduct alleged herein;

F.     Awarding Plaintiff the costs, expenses, and disbursements of this action, including any attorneys' and experts' fees and expenses and, if applicable, pre-judgment and post-judgment interest; and

G.     Awarding Plaintiff and the Class such other relief as this Court deems just, equitable, and proper.

Dated:  February 11, 2015

By: */s/ Balon B. Bradley*
LAW OFFICES OF BALON B. BRADLEY

Balon B. Bradley
SBN # 02821700
5473 Blair Road, Suite 100
Dallas, TX 75231
(972) 991-1582
balon@bbradleylaw.com

OF COUNSEL:

GARDY & NOTIS, LLP
Mark C. Gardy
James S. Notis
Tower 56
126 E. 56th Street, 8th Floor
New York, NY 10022
212-905-0509
mgardy@gardylaw.com